UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

U.S. DISTRICT COURT
EASTERN DISTRICT-WI
FILED
2018 JUN 26  P 5:09
STEPHEN C. DRIES
CLERK

UNITED STATES OF AMERICA,

    Plaintiff,

v.

ALBERT GOLANT, aka Alex Golant,

    Defendant.

Case No. 18-CR-144

[18 U.S.C. §§ 1343, 1344, & 2]

## INDICTMENT

**THE GRAND JURY CHARGES:**

### Allegations Common to All Counts

1. Beginning in at least 2015 and continuing until approximately May of 2017, in the State and Eastern District of Wisconsin and elsewhere,

**ALBERT GOLANT, aka ALEX GOLANT**

and others, known and unknown to the grand jury, knowingly devised and participated in a scheme to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises (the "scheme"), which scheme is further described below.

1

2. For purposes of executing the scheme, Golant transmitted and caused to be transmitted interstate wire communications.

3. Golant also engaged in a scheme to defraud federally insured financial institutions and to obtain money from such financial institutions by means of material false and fraudulent pretenses and representations.

4. At all times material, the deposits of the following financial institutions were insured by the federal government through the Federal Deposit Insurance Corporation ("FDIC"): Ally Bank, PNC Bank, and US Bank.

5. Since at least 2005, Golant has been involved in the business of purchasing luxury vehicles in the United States and shipping them overseas to individual foreign buyers both directly and through vehicle brokers. Golant operated numerous luxury vehicle sale and export businesses including, WI Automotive T.R.U.S.T. Lease, Registration, and Consulting LLC ("WI Automotive Trust"), d/b/a Timeless Auto Group; DOT Automotive of WI, LLC ("DOT Automotive"); and Reliable Car Source ("Reliable").

6. It was part of the scheme that Golant would use straw buyers to purchase luxury vehicles from dealerships in the United States. On certain purchases, Golant would provide the straw buyer with a cashier's check to pay for the vehicle. After purchasing the vehicle, the straw buyer would sign over the title to Golant, who would then sell and export the vehicle directly and through vehicle brokers. On other purchases,

2

Golant would direct the straw buyer to finance the purchase of the vehicle in his or her name using false and fraudulent financing applications, and with an agreement that Golant would pay off the loan after the straw buyer signed over the title to Golant. On some occasions, Golant paid off the loans obtained in the straw buyers' names in their entirety. On at least 50 occasions, Golant did not pay off the loans in the straw buyers' names, resulting in losses to the financial institutions.

7. It was further part of the scheme that Golant obtained funds from third parties by representing that the funds would be used to purchase specific luxury vehicles. The third parties included vehicle brokers, investors, and lenders, including but not limited to Royal Hao, Inc., Powerful Auto Group, Inc., ZHZ Auto Group, Inc., F Street Investments, Westchester Capital, and ED Medical Transport. Instead, Golant diverted those funds to his own personal use. Golant used the funds to gamble, to pay off gambling debts, to provide funds to professional gamblers to gamble on his behalf, to pay off prior loans, and to satisfy obligations to other clients. On certain occasions, Golant never purchased the specific luxury vehicle and did not return the funds. On other occasions, Golant would sell the same luxury vehicle to multiple clients at the same time. On still other occasions, Golant would obtain funds from investors, lenders, and clients for the purchase of luxury vehicles that he knew had already been sold and exported.

8. It was further part of the scheme that Golant fraudulently sold luxury vehicles, which he knew had previously been sold and exported to China, to dealerships

3

in Wisconsin and Illinois. After the vehicle was fraudulently sold to the dealership, Golant represented that he had a customer who would buy the vehicle back from the dealership using financing. Golant submitted false and fraudulent financing applications on behalf of his customers to obtain the financing for the vehicles.

9. Through his scheme, Golant fraudulently obtained at least $30 million from at least 40 different victims.

## COUNTS ONE THROUGH SEVEN
## (18 U.S.C. §§ 1343 & 2)

THE GRAND JURY FURTHER CHARGES:

10. The allegations set forth above in paragraphs one through nine of this indictment are hereby incorporated in support of the following charges as if set forth in full here.

11. On or about the dates indicated, in the State and Eastern District of Wisconsin and elsewhere,

**ALBERT GOLANT, aka ALEX GOLANT,**

for the purpose of executing the scheme and attempting to do so, knowingly transmitted and caused to be transmitted in interstate commerce the wire communications described below.

| Count | Date | Description of interstate wire communication |
|---|---|---|
| One | October 22, 2015 | A wire transfer for $206,711 from Royal Hao, Inc.'s bank account at Bank of America in California to WI Automotive Trust's bank account at Citibank in Wisconsin. |
| Two | March 31, 2016 | A wire transfer for $311,010 from Powerful Auto Group, Inc.'s bank account at East West Bank in California to WI Automotive Trust's bank account at Citibank in Wisconsin. |
| Three | April 25, 2016 | A wire transfer for $267,750 from ZHZ Auto Group, Inc.'s bank account at Wells Fargo bank in California to WI Automotive Trust's bank account at Citibank in Wisconsin. |

5

| Count | Date | Description of interstate wire communication |
|---|---|---|
| Four | November 1, 2016 | Wire transfers for $1,000,000 and $500,000 from F Street Investments' bank account at Waterstone bank in Wisconsin, using the FedWire system through the Federal Reserve Bank in New York, to WI Automotive Trust's bank account at MB Financial bank in Wisconsin. |
| Five | December 16, 2016 | A wire transfer for $390,000 from ZHZ Auto Group, Inc.'s bank account at Cathay Bank in California to WI Automotive Trust's bank account at Waterstone bank in Wisconsin. |
| Six | March 23, 2017 | A wire transfer for $159,300 from Westchester Capital's bank account at Popular Community bank in New York to WI Automotive Trust's bank account at PNC Bank in Wisconsin. |
| Seven | April 25, 2017 | A wire transfer for $169,735 from ED Medical Transport's bank account at Bank of America bank in California to Reliable Car Source's bank account at US Bank in Illinois. |

Each in violation of Title 18, United States Code, Sections 1343 and 2.

## COUNTS EIGHT THROUGH TWELVE
(18 U.S.C. § 1344)

12. The allegations set forth above in paragraphs one through nine of this indictment are hereby incorporated in support of the following charges as if set forth in full here.

13. On or about the dates indicated, in the State and Eastern District of Wisconsin,

**ALBERT GOLANT aka ALEX GOLANT,**

knowingly executed and attempted to execute his scheme to defraud the financial institutions set forth below by submitting false and fraudulent financing applications for luxury vehicles, when, in fact, Golant knew that the luxury vehicles had previously been sold and exported.

| Count | Date | Description of Financing Application |
|---|---|---|
| Eight | October 11, 2016 | A financing application in K.B.'s name for a 2016 Range Rover that had previously been exported to China, which resulted in a loan of $77,414.19 from Ally Bank. |
| Nine | September 28, 2016 | A financing application in M.B.'s name for a 2015 Range Rover that had previously been exported to China, which resulted in a loan of $69,407 from PNC Bank. |
| Ten | October 20, 2016 | A financing application in Y.O.'s name for a 2016 Range Rover that had previously been exported to China, which resulted in a loan of $80,398 from US Bank. |
| Eleven | November 7, 2016 | A financing application in S.S.'s name for a 2015 Mercedes Benz GL450 that had previously been |

7

Case 2:18-cr-00144-PP-WED   Filed 06/26/18   Page 7 of 10   Document 7

| Count | Date | Description of Financing Application |
|---|---|---|
| | | exported to China, which resulted in a loan of $45,398 from Ally Bank. |
| Twelve | November 17, 2016 | A financing application in B.S.'s name for a 2015 Mercedes Benz GL550 that had previously been exported to China, which resulted in a loan of $70,398 from Ally Bank. |

Each in violation of Title 18, United States Code, Section 1344.

8

## FORFEITURE NOTICE

1. Upon conviction of any one or more of the offenses in violation of Title 18, United States Code, Section 1341, set forth in Counts 1 through 7 of this Indictment, the defendant shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offense. The property to be forfeited includes, but is not limited to a sum of money equal to the proceeds derived from the offense.

2. Upon conviction of any one or more of the offenses in violation of Title 18, United States Code, Section 1344, set forth in Counts 8-12 of this Indictment, the defendant shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 982(a)(2)(A), any property constituting, or derived from, proceeds obtained, directly or indirectly, as a result of the offense. The property to be forfeited includes, but is not limited to a sum of money equal to the proceeds derived from the offense.

3. If any of the property described above, as a result of any act or omission by a defendant: cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third person; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be subdivided without difficulty, the United States of America

9

shall be entitled to forfeiture of substitute property, including but not limited to approximately $435,000 in U.S. Currency seized from the defendant on or about July 12, 2017 by Dominican Republic customs officials, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1) and Title 28, United States Code, Section 2461(c).

A TRUE BILL:

FOREPERSON

Date: June 26, 2018

MATTHEW D. KRUEGER
United States Attorney